**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARY TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-CV-33 RLW |
| | ) | |
| COLLEEN SHOGAN, *Archivist of* | ) | |
| *The United States Nationals Archives and* | ) | |
| *Records Administration*,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of Defendant Colleen Shogan, Archivist of

the United States National Archives and Records Administration ("NARA" or "Defendant") to

dismiss Plaintiff's cause of action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6),

or alternatively, for summary judgment pursuant to Fed. R. Civ. P. 56. (ECF No. 30). Plaintiff

Mary Turner, who is proceeding in this matter pro se without the assistance of counsel, opposes

the motion and filed a response memorandum. Plaintiff also responded to Defendant's Statement

of Uncontroverted Material Facts and attached to her response a number of exhibits.[2]  The motion

---

[1] Colleen Shogan became the Archivist of the United States Nationals Archives and Records Administration on May 17, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Colleen Shogan should be substituted, therefore, for Debra Steidel Wall as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Defendant's alternative motion for summary judgment was filed prior to the completion of discovery in this case.  Plaintiff, however, neither requested additional time to take discovery nor sought relief from the Court pursuant to Fed. R. Civ. P. 56(d).  The Court, therefore, will take up defendant's motion for summary judgment on the merits.

is fully briefed and ripe for review.  For the reasons that follow, the Court grants Defendant's Motion for Summary Judgment.

## I.  Background

On November 21, 2022, Plaintiff Mary Turner filed a First Amended Employment Discrimination Complaint (hereinafter "Complaint") against NARA.  The Complaint, which was filed on a form complaint with attached exhibits, purports to bring claims against Defendant pursuant to the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, et seq., and Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, et seq., ("Title VII")[3]  (ECF No. 28 at 2).  As for the nature of the case, Plaintiff checked the following boxes: "failure to promote me," "failure to accommodate my disability," "retaliation," and "harassment."  (ECF No. 28 at 4).  Plaintiff alleges she was discriminated against based on her disability.  Plaintiff also alleges that she was retaliated against for "prior EEO and protected activity (reprisal)" and subject to "disparate treatment."  (ECF No. 28 at 5).

Plaintiff attached to the form Complaint an "Exhibit" in which she details the facts of her claims and assert three counts against NARA.  (ECF No. 28, Ex. 1).  In Count I, Plaintiff alleges NARA "blocked and withheld" promotions in retaliation for Plaintiff reporting harassment and communicating with supervisors and management about purported employment discrimination taking place in her workplace.  (Id. at 3).  In Count II, Plaintiff alleges NARA proposed to "demote/downgrade" her for requesting a reasonable accommodation.  (Id. at 7).  In Count III, Plaintiff alleges NARA (a) harassed her "out of retaliation"; (b) disciplined her without cause for requesting a reasonable accommodation; (c) retaliated against her by delaying a decision on her

---

[3]Plaintiff also purports to bring suit under federal regulations, including "29 CFR Part 1614 (EEO); 29 CFR 1614.101, 1614.102, 1614.203 . . . [and] 29 CFR 1614.407."  (ECF No. 28 at 2).

request for a reasonable accommodation; and (d) retaliated against her by denying her request for a reasonable accommodation.  (Id. at 8).

Plaintiff also attached to her Complaint a notice of receipt for her request for hearing from the United States Equal Employment Opportunity Commission ("EEOC") dated April 17, 2020, (ECF No. 28, Ex. 2); an Acceptance Letter from the NARA Equal Employment Opportunity ("EEO") Office dated August 27, 2019, (Id.); a notice of receipt for request for hearing from the EEOC dated December 7, 2020, (ECF No. 28, Ex. 3); a letter dated September 28, 2020, from the NARA EEO Office regarding Plaintiff's "Amended Complaint," (Id.); an Acceptance Letter from the NARA EEO Office dated July 23, 2020, (Id.); and select pages from a Report of Investigation from the NARA dated October 20, 2020. (ECF No. 28, Ex. 4).

For relief, Plaintiff requests that the Court order the NARA to (1) retract "any and all discipline"; (2) accommodate her disability by transferring her to at least a GS9 position "not under NPRS hierarchy or jurisdiction" and allow her to permanently telework five days a week; (3) promote her to GS-11 backdated three years "with all pay and personnel actions"; (4) to pay her $50,000 "and whatever additional compensation the Court deems appropriate."  (ECF No. 28 at 6).  Plaintiff also requests attorney's fees, although she is proceeding in this matter pro se.

In its motion to dismiss, or alternatively, for summary judgment, Defendant moves to dismiss all claims Plaintiff is asserting against it.

## II.     Legal Standards

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "where the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
Blomker v. Jewell, 831 F.3d 1051, 1055 (8th Cir. 2016) (quotation omitted).  The facts alleged
must "raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  A complaint
must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause
of action'" to state a plausible claim for relief.  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S.
at 555).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in
the complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550
U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader
is entitled to relief.  Id. at 555–56; Fed. R. Civ. P. 8 (a)(2). The principle that a court must accept
as true all of the allegations contained in a complaint is inapplicable to legal conclusions, however.
Iqbal, 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported
by mere conclusory statements, do not suffice").  Although legal conclusions can provide the
framework for a complaint, they must be supported by factual allegations.  Id.

A pro se complaint should be liberally construed.  Stone v. Harry, 364 F.3d 912, 914 (8th
Cir. 2004) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  See also Frey v. City of
Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) (holding that in civil rights actions a complaint
should be liberally construed when determining whether it has stated a cause of action sufficient
to survive a motion to dismiss).  The complaint, however, "still must allege sufficient facts to
support the claims advanced."  Stone, 364 F.3d at 914 (citing Dunn v. White, 880 F.2d 1188, 1197
(10th Cir. 1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we
construct a legal theory for plaintiff that assumes facts that have not been pleaded."); Cunningham
v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner

4

which, taking the pleaded facts as true, states a claim as a matter of law.").  The Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."  Wiles v. Capitol Indem. Corp., 280 F.3d 868, 870 (8th Cir. 2002).

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Ia. v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in her pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable

5

jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact, see Crossley v. Georgia-Pac. Corp., 355 F.3d 1112, 1114 (8th Cir. 2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005).

### III. Facts

In support of its motion for summary judgment, Defendant submitted a Statement of Uncontroverted Material Facts ("SUMF"). Plaintiff responded to SUMF, however, in some instances, Plaintiff lodged objections and denials that were evasive or not supported by references to evidence in the record. Further, Plaintiff did not provide the Court with a statement of material facts as to which she contends a genuine dispute exists. Accordingly, Plaintiff has not met the requirements of Local Rule 4.01(E).[4] See also Deichmann v. Boeing Co., 36 F.Supp.2d 1166, 1168 (E.D. Mo. 1999), aff'd, 232 F.3d 907 (8th Cir. 2000). Cf. Nw. Bank & Tr. Co. v. First Ill.

---

[4] Local Rule 4.01(E) provides, with respect to summary judgment motions:

A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E).

Nat'l Bank, 354 F.3d 721, 725 (8th Cir. 2003) (district court did not abuse its discretion by applying local rules that excluded some of the material facts offered in opposition to a motion for summary judgment).

After reviewing the record, and with the summary judgment standard in mind, the Court accepts the following facts as true for purposes of resolving Defendant's Motion to Dismiss or, Alternatively, for Summary Judgment:

Plaintiff is an African American woman, who works at the NARA's National Personnel Records Center ("NPRC") in Spanish Lake, Missouri. On June 7, 2012, Plaintiff posted the following on NARA's Internal Collaboration Network ("ICN"):

> At NPRC in St. Louis, we're unable to fill critical, vacant positions or temporarily promote into these same positions 'because of the hiring freeze", yet positions at other locations have been filled despite the hiring freeze. Would someone in the know mind explaining this?" Vacant Positions at NPRC – St. Louis June 7, 2012, at 2:49 AM.

(ECF No. 31, Ex. A at 1).

Later that same day, the Director of NPRC and one of Plaintiff's supervisors, Scott Levins, informed Plaintiff that "poking and prodding" NARA's Chief Operating Officer, William Bosanko, "could negatively affect future promotions for her." (ECF No. 31 at 2, ¶3). According to Plaintiff, Mr. Levins confronted her about her ICN post in-person two times on June 7, 2012. That same day, Plaintiff reported Mr. Levins's response to her post to her immediate supervisor, Linda Kirksey. Ms. Kirksey reported Plaintiff's complaint to Ms. Kirksey's supervisor, Kevin Pratt who, in turn, reported Plaintiff's complaint to Mr. Levins. (ECF No. 31 at 2, ¶¶5-6). Later that evening, Plaintiff also wrote an email to Mr. Levins "expressing her shock, horror, and disbelief over [his] actions toward [her] that day." (ECF No. 36 at 2).

On August 8, 2012, Plaintiff sent an email to Mr. Bosanko.  Plaintiff wrote that Mr. Levins cautioned her regarding "how a future promotion for [her] that may come across someone's desk in College Park, [Maryland] could be blocked by people in College Park, [Maryland] if I didn't behave." (ECF No. 31 at 2, ¶6).

In December 2013, March 2014, March 2015, June 2017, October 2017, and November 2017, Plaintiff applied for promotions within NARA.  Plaintiff alleges that she was qualified, if not among the best qualified for these promotions, but she was not selected out of retaliation for the post she made on ICN and her reporting of Mr. Levins's response to her post.  In February 2018, Plaintiff filed a formal EEO Complaint of discrimination for retaliation, No. 1810STL.

On April 26, 2018, Plaintiff went out on leave for "severe stress, anxiety, and depression." (ECF No. 36 at 4).  That same day, Plaintiff requested a reassignment out of what she perceived to be a hostile work environment to the Quality Assurance team.  Plaintiff's request to move to Quality Assurance was denied, but she was reassigned to another team, Core Three, with a different supervisor, Greg Sampson.  (ECF No. 36, Ex. 2-12).  The expected reassignment date was May 13, 2018, although Plaintiff was projected to be on leave through May 29, 2018.[5]  (ECF No. 36 at 5).

During this time, NARA was in the process of recruiting 25 Archives Technicians, who were scheduled to come on board on May 13, 2018.  Due to Plaintiff's absence and transfer, another supervisor, a white male, was brought in to prepare for the new trainees.  Plaintiff's office was given to the new supervisor.  Three supervisory employees, Betty Whitely, Sharon Box, and

---

[5]In March 2018, Plaintiff provided NARA with advance notice that she would be on military leave on May 16 and May 21-25, 2018.  (ECF No. 36, Ex. 8).

8

Kevin Pratt stacked Plaintiff's desk items and personal belongings on a rolling cart, which they placed in a broom closet.  NARA had never moved Plaintiff's desk items and personal belongings to a broom closet before when Plaintiff was on prior leaves of absence, some of which were more than 60 days.

On May 14, 2018, Plaintiff notified her first level supervisor, Ms. Whitley, that she would be in the next day for an EEO mediation.  She requested two hours of official EEO time to prepare.  Ms. Whitley informed Plaintiff that her requested leave time was approved, and that a conference room was blocked for two hours for her use.  The EEO mediation regarding Plaintiff's February 2018 EEO complaint was held on May 15, 2018.

On June 7, 2018, Plaintiff shared concerns in an email to Kevin Pratt about his apparent failure to keep EEO mediation discussions confidential.  She also identified "the failures of and weakness in the Agency's EEO programs."  (ECF Nos. 31 at 4; 36, Ex. 9).  David Ferriero, Archivist of the United States, among others, was copied on the email.  Plaintiff received no response from the Archivist or his designee.  On June 22, 2018, Plaintiff complained to NARA's Office of Inspector General ("OIG") "about her office and belongings being moved, asking that the matter be investigated."  (Id.).

In August 2018, Plaintiff did not receive a promotion for which she applied.  Plaintiff asserts that she did not receive the promotion "[b]ecause of Scott Levins's threats in June 2012, to Plaintiff's future promotions."  (ECF No. 36 at 8).

On March 4, 2019, Plaintiff filed a second formal EEO complaint against NARA, No. 1911STL, "for retaliation and reprisal because of [NARA]'s continuing pattern of failing to promote Plaintiff."  (ECF No. 28, Ex. 1 at 6).  And on March 5, 2019, Plaintiff again contacted the OIG "requesting a status on Plaintiff's OIG complaint."  (ECF No. 36 at 9).  In August 2019

9

Plaintiff learned that her OIG complaint had been "remanded" back to Mr. Levins and Plaintiff's other supervisors including Kevin Pratt, Sharon Box, and Betty Whitley.  Plaintiff amended EEO complaint No. 1911STL in April, July, and August 2019 to include retaliation and reprisal based on the removal of her office, computer, desk, and personal belongings, the OIG's failure to investigate the incident, "and various other incidents."  (ECF No. 28, Ex. 1 at 7).

On January 11, 2020, Plaintiff requested an accommodation for her Generalized Anxiety Disorder and depression.  Plaintiff specifically asked that she be given the following accommodation:

> I am requesting to be reassigned immediately to a non-supervisory GS9 position out of the chain of supervision and influence of Scot Levins and the supervision and influence of those currently in Scott Levins's lower reporting chain.  However, I am requesting that my physical work location remains at 1 Archives Drive, St. Louis MO.

(ECF No. 30, Ex. D at 1).

On February 23, 2020, Plaintiff submitted to NARA documentation from her clinical psychologist to support her request for an accommodation.  In the documentation provided to NARA, Plaintiff's clinical psychologist stated, "the best option would be to place [Plaintiff] under a completely different hierarchy of supervisors," and "it is imperative that [Plaintiff] be assigned to a comparable role where she is not overseen or supervised by anyone in her current supervisory hierarchy."  (ECF No. 28, Ex. 1 at 7).

NARA did not offer Plaintiff a new position under a different supervisor with a pay grade of GS9 or above.  Defendant did offer Plaintiff other positions that would have placed Plaintiff under a new supervisor, but these positions were with a lower pay grade.  Plaintiff declined these positions.  Plaintiff elected to participate in NARA's reassignment accommodation process, for which she was required to complete a reassignment form.  Plaintiff checked the section on the

reassignment form that she was only interested in GS9 positions.  Plaintiff states that during the reassignment accommodation process from March to August 2020, she expressed on numerous occasions a desire to be placed in a position at or with the promotion potential of her then current grade, GS9.

Plaintiff states that NARA failed to offer her vacancy # 20-NARA-97-A.  According to Plaintiff, she was qualified for the position, and the agency failed to offer it to her as an accommodation.  Aside from the vacancy number, Plaintiff has not provided additional information about this position, such as the job title, a job description, duties, qualifications, location, pay grade, or to whom the position reported.  There is also no information as to whether the position was filled or by whom.

On March 4, 2020, Plaintiff's supervisor, Gregory Sampson, issued Plaintiff a "Performance Counseling (Non-Adverse)," in which he advised Plaintiff that her performance of the prior five months was "unsuccessful."  (ECF No. 30, Ex. F).  In the document, Mr. Sampson explained in detail why he found her performance to be unsuccessful.  Plaintiff alleges Mr. Sampson was aware of her "prior EEO and protected activity," and issued her the performance counseling due to Plaintiff's inability to work on account of her medical condition and disability-related illness.  (ECF No. 28, Ex. 1 at 8 & 9).

On April 15, 2020, Mr. Sampson issued Plaintiff a warning letter.[6]  (ECF No. 30, Ex. G). According to the letter:

> On April 7th, you were directed to provide a point of contact for your scheduled absence on 10 April 2020.  Your failure to follow this directive result in me having to determine the point of contact for your team during your absence without any input from you.

---

[6]Plaintiff makes much of the fact that the warning letter was issued on April 15, her birthday.

11

(Id.).   Plaintiff contends Mr. Sampson wrote the warning letter because she had asked for clarification about an assignment.   Under its terms, the warning letter was placed in Plaintiff's officer personnel folder (OPF) for one year.   "During this period, [the letter] may be used in determining an appropriate penalty if further infractions occur."   (Id.).   There is no evidence in the record of further infractions or penalties.   In short, there is nothing that would indicate the warning letter was used against Plaintiff for disciplinary reasons or personnel actions.   Plaintiff states that prior to these two incidents she had never been issued any negative counseling or warning letter.

On March 6, 2020, Plaintiff notified EEO Specialist Tanya Shorter about an instance of harassment on the part of Mr. Sampson.   On April 16, 2020, Plaintiff complained to human resources about another instance of harassment by Mr. Sampson.   Plaintiff provides no further details about the nature of the purported harassment.   According to Ms. Shorter's signed sworn statement, "The Ad Hoc Committee look (sic) into the matter and determined that harassment or inappropriate behavior was not substantiated."[7]   (ECF No. 30, Ex. E at 3).

On May 1, 2020, Plaintiff filed a third EEO complaint against NARA, No. 2020-16STL.   Plaintiff states that she filed the third complaint because NARA had delayed her request for a reasonable accommodation.   (ECF No. 36 at 15).   On September 18, 2020, Plaintiff amended her

---

[7]In her response to Defendant's SUMF, Plaintiff denies this fact.   In support of her denial, she attaches an excerpt the NARA Report of Investigation, Case No. 2020-16STL, which is dated October 20, 2020.   (ECF No. 36-1 at 23).   In this report, there is a summary of Ms. Shorter's sworn statement.   The report states, "Ms. Shorter states that the Ad Hoc Committee looked into an allegation [Plaintiff] made about Mr. Sampson on April 16, 2020 and determined it was substantiated."   There appears to be a typo in this sentence from the report, because Ms. Shorter's sworn statement states that Plaintiff's claims of harassment were found to be "not unsubstantiated."   (ECF No. 30, Ex. E at 3).   But whether a committee found Plaintiff's complaint of harassment against Mr. Sampson were substantiated or not is immaterial, because a committee's finding is not determinative as to whether Plaintiff was unlawfully harassed under the Rehabilitation Act for requesting an accommodation.

third EEO complaint because on August 6, 2020, NARA denied her request for a reasonable accommodation.

## IV. Discussion

In its motion, Defendant moves for the dismissal of all of Plaintiff's claims against it. Defendant argues Plaintiff has failed to state a claim based on the allegations in the Complaint. Alternatively, Defendant moves for summary judgment and argues the undisputed facts entitled it to judgment as a matter of law.  Both parties have submitted evidence in support of and in opposition to the motion.  The Court, therefore, takes up Defendant's motion on summary judgment and will address the claims in each of the counts in turn.

### A.      Count I – Retaliation

In Count I, Plaintiff alleges NARA blocked and withheld promotions from her because she reported harassment and communicated with those in her management and supervisory chain about employment discrimination at her workplace.  Plaintiff also alleges in Count I that NARA retaliated against her for engaging in EEO activity by taking away her office and moving her desk items and personal belongings to a broom closet.

It is not clear from the Complaint whether Plaintiff is attempting to pursue retaliation claims under Title VII or the Rehabilitation Act in Count I.  Title VII prohibits employers from retaliating against employees from engaging in activity that is protected under the statute. 42 U.S.C. §§ 2000e-3(a) and 2000e-16(a).  A claim of retaliation under Title VII is not based upon discrimination, "but instead upon an employer's actions taken to punish an employee who makes a claim of discrimination." Haas v. Kelly Servs., Inc., 409 F.3d 1030, 1036 (8th Cir. 2005), abrogated in part on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir.

2011).  There are prohibitions against retaliation under Rehabilitation Act as well.  Sherman v. Runyon, 235 F.3d 406, 409 (8th Cir. 2000).

The standard for stating a retaliation claim is essentially the same under both statutes.  In order to state a claim of retaliation, a plaintiff must allege: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two.  Lopez v. Whirlpool Corp., 989 F.3d 656, 664 (8th Cir. 2021); Lopez, 989 F.3d at 664 (retaliation standard under Title VII), Withers v. Johnson, 763 F.3d 998, 1005 (8th Cir. 2014) (retaliation standard under Rehabilitation Act).  Plaintiff can satisfy the first element if she "oppos[ed] an act of discrimination made unlawful by [the statute] ('the opposition clause'), or participat[ed] in an investigation under [the statute] ('the participation clause')."  Lopez v. Whirlpool Corp., 989 F.3d 656, 664 (8th Cir. 2021) (quoting Hunt v. Nebraska Pub. Power Dist., 282 F.3d 1021, 1028 (8th Cir. 2002)).  Plaintiff must also show "an objectively reasonable belief that an actionable [statutory] violation has occurred for her complaint to qualify as a protected activity."  Gibson v. Concrete Equip. Co., Inc., 960 F.3d 1057, 1064 (8th Cir. 2020).

1.    Retaliation based on conduct in summer 2012

With regard to the events in the summer of 2012, Defendant moves to dismiss the claims against it on the ground that Plaintiff fails to allege or demonstrate facts to support a finding that she engaged in protected activity.  Defendant further argues that even if Plaintiff has alleged or shown that she engaged in a protected activity, the time interval between the supposed protected activity and denials of promotions breaks the required causal link.

Plaintiff argues she engaged in protected activity when on June 7, 2012, she posted on NARA's ICN about employment practices at NPRC.  Plaintiff also argues that reporting Mr. Levins's response to her ICN comment to her immediate supervisor on June 7, 2012, constitutes

14

protected activity, as does her reporting of Mr. Levins's response to his supervisor, Mr. Bosanko, which she did in August 2012.

"Protected activity is an informal or formal complaint about, or other opposition to an employer's practice or act if the employee reasonably believes such an act to be in violation of the statute in question." Jeseritz v. Potter, 282 F.3d 542, 548 (8th Cir. 2002) (citations and quotations omitted). There is nothing in the comment Plaintiff made on ICN that would indicate she was engaging in protected activity under Title VII or the Rehabilitation Act. The comment Plaintiff posted was a question about the hiring freeze at NPRC in St. Louis. On its face, the post does not refer to unlawful discrimination or a protected class of persons. Plaintiff does not explain why she believes she was opposing an act of discrimination under Title VII or the Rehabilitation Act in her ICN post. The Court finds Plaintiff was not engaging in a protected activity when she posted a comment on ICN.

Further, reporting Mr. Levins's response to her comment does not constitute protected activity under either Title VII or the Rehabilitation Act. Nothing in Mr. Levins's statements or conduct suggest that a reasonable person would have believed that Mr. Levins violated Title VII or the Rehabilitation Act, as his statements neither implicated the Rehabilitation Act or Title VII, nor referenced the classes of persons those statutes were designed to protected. At most, Mr. Levins was warning Plaintiff that openly criticizing NARA's general employment practices might negatively impact her career advancement opportunities at NARA.

To the extent Plaintiff claims that she reported Mr. Levins's statements and conduct because they were harassment, Plaintiff's argument also fails because Mr. Levins's statements do not constitute harassment, and no reasonable person would believe they were. Shirrell v. Saint Francis Med. Ctr., 24 F. Supp. 3d 851, 862 (E.D. Mo. 2014), aff'd sub nom. Shirrell v. St. Francis

Med. Ctr., 793 F.3d 881 (8th Cir. 2015). "Harassment standards are demanding. Mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to support a claim of hostile work environment." Id. at 863 (citations and quotations omitted). This means "that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. (citations and quotations omitted).

To qualify as a protective activity, the action a plaintiff opposes need not be unlawful, but the plaintiff must have "a good faith, objectively reasonable believe that the conduct [of which she complained] was unlawful." Id. Plaintiff did not engage in "protected activity" when she reported Mr. Levins's June 2012 cautionary statements to her supervisors, because no reasonable person would have believed that Mr. Levins remarks and/or conduct on June 7, 2012 constituted harassment under Title VII or the Rehabilitation Act. Shirrell, 24 F. Supp. 3d at 863 (citing Bakhtiari v. Lutz, 4:04-CV-1071 AGF, 2006 WL 2664383 (E.D. Mo. Sept. 16, 2006)). Therefore, Plaintiff did not engage in "protected activity" by reporting Levins's June 2012 statement to her supervisors.

Even if the Court determines that Plaintiff engaged in protected activity in the summer of 2012, she fails to establish the denials of promotions were causally linked to her ICN post or her reporting Mr. Levins's statements and conduct to her supervisors. More than 18 months passed from the time she made the ICN post and reported Mr. Levins's response to when NARA first denied her request for promotion in December 2013. As a matter of law, the 18-month time period breaks any causal connection between the supposed protected activity and the denials of her requests for promotion in December 2013, May 2014, March 2015, June 2017, October 2017, November 2017, and August 2018. Lewis v. St. Cloud State Univ., 467 F.3d 1133, 1138 (8th Cir.

16

2006) (two months between the protected activity and the 13 adverse employment action breaks the causal connection).  Plaintiff's ICN comment and the reporting of Mr. Levins's response cannot form the basis of Plaintiff's retaliation claim under either Title VII or the Rehabilitation Act, and Defendant is entitled to summary judgment as a matter of law as to this claim.

### 2.    Moving Plaintiff's desk items and personal belongings

In Count I, Plaintiff also alleges that NARA retaliated against her by moving her office to a broom closet while she was on leave.  Plaintiff alleges that she filed a formal EEO complaint in February 2018, claiming retaliation, and approximately three months later, on May 14, 2018, her supervisors unlawfully retaliated against her by moving her desk items and personal belongings to a broom closet.

Defendant argues that moving an office is not an adverse employment action that is actionable under Title VII or the Rehabilitation Act.  To constitute an adverse employment action, the complained of action must be "materially adverse, which in th[e] context [of a retaliation claim] means that it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted).  The Court finds that moving Plaintiff's desk items and personal belongings to a broom closet does not constitute a materially adverse employment action.  Tyler v. Univ. of Arkansas Bd. of Trustees, 628 F.3d 980, 987 (8th Cir. 2011) (moving office to a less desirable location was not an adverse employment action); Gilbert v. Des Moines Area Cmty. Coll., 495 F.3d 906, 918 (8th Cir. 2007) (move from office with window to office without window not material adverse). See also Spector v. Bd. of Trs. of Cmty-Tech. Colls., 316 F. App'x 18, *20-*21 (2d Cir. 2009) (same).  This is especially true in this case because Plaintiff was on extended leave at the time NARA moved her things from her office.

Furthermore, there is no evidence in the record that moving her desk items and personal belongings to a broom closed blocked Plaintiff's ability to prepare for and participate in the EEO mediation that took place on May 15, 2018.  The evidence is undisputed that Plaintiff's supervisors arranged for Plaintiff to have a conference room when Plaintiff came to the worksite the morning of the scheduled mediation, and Plaintiff participated in the mediation.

Even if moving Plaintiff's desk items and personal belongings to a broom closet is an adverse employment action, NARA possessed legitimate reasons for moving Plaintiff's office and things.  While Plaintiff was out on leave, she was assigned for a new position on a different team.  Around the same time, NARA was expecting 25 new employees and needed another supervisor to prepare for the new trainees.  Accordingly, Plaintiff's supervisors moved Plaintiff's desk items and personal belongings from her office to a closet, so that the new supervisor could use her former office.  In other words, there is undisputed evidence that when Plaintiff was on leave, NARA needed office space for the supervisor filling Plaintiff's former position, and NARA moved her things to storage to free up office space.  Plaintiff fails to establish that NARA moved her office because she filed an EEO complaint.

In sum, as to the conduct set forth in Count I, the Court finds Plaintiff has failed establish that she was unlawfully retaliated against in violation of Title VII or the Rehabilitation Act. Defendant is entitled to summary judgment as to Count I.

### B.    Count II - Failure to Provide a Reasonable Accommodation

In Count II, Plaintiff alleges that she requested a reasonable accommodation for her Generalized Anxiety Disorder and depression.  It is undisputed that Plaintiff requested that she be reassigned to a position "out of the chain of supervision and influence of Scott Levins and the supervision and influence of those currently in Scott Levins' s lower reporting chain."  (ECF No.

18

30, Ex. D at 1).  Defendant moves that the Court dismiss Plaintiff's claim in Count II for failure to accommodate because, it argues, the accommodation Plaintiff requested was unreasonable as a matter of law.

Under the Rehabilitation Act, which is applicable to federal employees, "'[a]n employer commits unlawful discrimination . . . if the employer does not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer].'" Ballard v. Rubin, 284 F.3d 957, 960 (8th Cir. 2002) (quoting Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 951 (8th Cir. 1999)). As the Eighth Circuit has observed, "where the employee truly and affirmatively requested accommodation, that the scope of the employer's obligation in this regard is determined through an informal, interactive process between the employer and the employee, identifying the limitations arising from the disability and potential reasonable accommodations that could overcome those limitations." Id. (quotations omitted).  Under the Rehabilitation Act and its regulations, "discrimination occurs if 'a covered entity [does] not [ ] make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business.'"  Peebles v. Potter, 354 F.3d 761, 766 (8th Cir. 2004) (quoting 29 C.F.R. § 1630.9(a) (2003)).

Setting aside the issue of whether Plaintiff is a qualified individual with a disability under the Rehabilitation Act, the Court finds Plaintiff's request that she be reassigned to a position out Scott Levins's chain of command and influence to be an unreasonable accommodation request. The Eighth Circuit has not expressly addressed whether a request for a different supervisor is a

reasonable accommodation under the Rehabilitation Act.  It has affirmed, however, the dismissal of an ADA failure to accommodate claim that was based, in part, on the district court's finding that a "request for a different supervisor was not a reasonable accommodation request." See Freese v. Hawkeye Cmty. Coll., 149 F. App'x 540, 541–42 (8th Cir. 2005).  See also Wallin v. Minnesota Dep't of Corr., 153 F.3d 681, 689 (8th Cir. 1998) ("unlikely" that plaintiff's accommodation request for a transfer away from co-workers' alleged harassment causing him stress was "reasonable").

Other courts that have addressed the issue have held that a request for a different supervisor is not a reasonable accommodation request.  See Bender v. Sec'y, Dep't of Def., No. 21-12103, 2022 WL 3703805, at *4 (11th Cir. Aug. 26, 2022) ("allegations in [ ]complaint, considered alongside [plaintiff's] doctor's recommendation, show that she was requesting to transfer to a different worksite to have a different supervisor, which is not a reasonable accommodation as a matter of law"); D'Onofrio v. Costco Wholesale Corp., 964 F.3d 1014, 1024 (11th Cir. 2020) ("a transfer of an employee from an incompatible supervisor is not a reasonable accommodation"); Gaul v. Lucent Techs., Inc., 134 F.3d 576, 581 (3d Cir. 1998) (holding that a request to be transferred away from a supervisor who was causing a plaintiff stress was unreasonable as a matter of law); Wernick v. Fed. Rsrv. Bank of New York, 91 F.3d 379, 384 (2d Cir. 1996) (employer not required to assign the plaintiff to a new supervisor); Weiler v. Household Fin. Corp., 101 F.3d 519, 526 (7th Cir. 1996) (holding employer's denial of the plaintiff's request to be assigned to a different supervisor because her current supervisor caused her anxiety and depression did not constitute a failure to grant a "reasonable accommodation"); Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 139 (2d Cir. 1995) (finding request for no contact with supervisor to be unreasonable as a matter of law); Huwe v. Brennan, No. CV 15-3687, 2018 WL 2144294, at *7 (D. Minn. May

9, 2018) (request for new supervise not a reasonable accommodation); Quinn v. St. Louis Cnty., No. CV 09-1372 ADM/RLE, 2009 WL 10678554, at *3 (D. Minn. Nov. 9, 2009) (employers have no duty to accommodate a restriction against working under a particular supervisor); Potter v. Xerox Corp., 88 F. Supp. 2d 109 (W.D.N.Y. 2000), aff'd, 1 F. App'x 34 (2d Cir. 2001) (employer was not required to transfer employee to different department under different supervisor as accommodation for depression and anxiety as result of conflict with supervisor).  These cases are consistent with the EEOC's guidelines, which specifically states that "[a]n employer does not have to provide an employee with a new supervisor as a reasonable accommodation." EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, Question 33 (EEOC Notice No. 915.002, Oct. 17, 2002).

Furthermore, the evidence establishes that NARA engaged the interactive process with Plaintiff.  Following her request for a different supervisor, Plaintiff elected to participate in NARA's reassignment accommodation process.  During this process, Plaintiff was offered vacant positions under different supervisors.  Plaintiff did not accept these positions because the pay grades were lower than her then current pay grade.  In her Complaint and responses to Defendant's motion and SUMF, Plaintiff points to vacancy # 20-NARA-97-A, a position for which she contends she was qualified and did not receive.  Plaintiff, however, does not provide any additional information about this purported vacancy, such as the job title, a job description, duties, qualifications, location, pay grade, or to whom the position reported.

Reassignment to a vacant position can be a reasonable accommodation "when the employee cannot be accommodated in his existing position."  Ehlers v. Univ. of Minn., 34 F.4th 655, 660 (8th Cir. 2022) (citation omitted). But an employer "is not required to create a new position or move other employees from their jobs in order to open up a position."  Minnihan v.

21

Mediacom Commc'ns Corp., 779 F.3d 803, 814 (8th Cir. 2015).  Plaintiff has not established that under the facts of this case assignment to a vacant position would have been a reasonable accommodation.

In sum, the Court finds Defendant is entitled to summary judgment as to Count II, because Plaintiff's request that she be assigned to a position that was not under Mr. Levins's supervision or anyone in his chain of command was not a request for a reasonable accommodation.  In addition, Plaintiff has not shown there was a vacancy outside Mr. Levins's supervision or chain of command that was at or above her pay grade to which she would have been entitled as a reasonable accommodation.

### C. Count III – Retaliatory Discipline, Delay in Deciding Request for Accommodation, and Denial of Request for Accommodation

In Count III, Plaintiff makes a number of claims.  Plaintiff alleges she was (1) harassed in retaliation; (2) discipled for requesting an accommodation, and (3) delayed and denied her request for an accommodation due to retaliation, reprisal, and disparate treatment.  Defendant moves to dismiss all claims asserted in Count III.

#### 1. Hostile work environment

In Count III, Plaintiff alleges that she was harassed "out of retaliation."  (ECF No. 28 at 8). Plaintiff does not allege, however, who harassed her and on what basis.  Plaintiff does allege that her supervisor, Mr. Sampson, wrote and issued her a "negative performance counseling" because she was unable to work due to her medical condition, and a warning letter because she asked for clarification about an assignment.  (Id.).  There are no allegations whatsoever that Mr. Sampson engaged in unwanted touching, made derogatory comments, or used coarse inappropriate language.

To establish a claim of hostile work environment or harassment, Plaintiff must prove: (1) that she was a member of a protected class; (2) the occurrence of unwelcome harassment; (3) a causal nexus existed between the harassment and her membership in the protected class; and (4) the harassment affected a term, condition, or privilege of employment. Jenkins v. Winter, 540 F.3d 742, 749–50 (8th Cir. 2008). "A hostile environment exists when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Palesch v. Missouri Comm'n on Hum. Rts., 233 F.3d 560, 566 (8th Cir. 2000) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

Performance counseling and a warning letter do not rise to the level of actionable harassment because they were not severe enough to affect the terms, conditions, or privileges of Plaintiff's employment. Moses v. Dassault Falcon Jet-Wilmington Corp, 894 F.3d 911, 923 (8th Cir. 2018). The "standard for demonstrating a hostile work environment . . .  is a demanding one. [Anti-discrimination laws] do[ ] not prohibit all verbal or physical harassment and [they are] not a general civility code for the American workplace." Cross v. Prairie Meadows Racetrack & Casino, Inc., 615 F.3d 977, 981 (8th Cir. 2010) (quotations and citations omitted).  As the Eighth Circuit has explained:

> The stringent hostile work environment standard is designed to filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language ... and occasional teasing. [M]erely rude or unpleasant conduct are insufficient to affect the terms and conditions of employment. The plaintiff must show that the alleged harassment was so intimidating, offensive, or hostile that it poisoned the work environment. [S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.

Moses, 894 F.3d at 922–23 (internal quotation marks and citations omitted). See also Al-Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1038 (8th Cir. 2005) (affirming summary judgment of harassment claim based on offensive utterances).

Furthermore, subjecting an employee to a higher level of scrutiny is not actionable harassment. O'Brien v. Dep't of Agric., 532 F.3d 805, 810 (8th Cir. 2008).  In O'Brien, the plaintiffs had engaged in protected activity and subsequently their supervisor subjected them to heightened scrutiny, reduced some of their authority, did not allow one to attend training, did not allow one to work from home, denied one a performance award, discussed suspending them, and attempted to institute disciplinary action against them, in addition to interfering with their work, isolating, embarrassing and ostracizing them.  Id.  Even under these facts, the Eighth Circuit ruled the plaintiffs had failed to establish a claim of hostile work environment.  The court held that the district court properly granted summary judgment to the defendants because the plaintiffs' working conditions were not so severe or pervasive that they rose to the level of a hostile work. Id.

Here, for her harassment claim, Plaintiff points to the fact that after she filed an EEO complaint she was subject to performance counseling and issued a warning letter.  Plaintiff points to no other conduct in support of her harassment claim in Count III.  Under Eighth Circuit law, Plaintiff fails to establish that she was subjected to a hostile work environment based on performance counseling and the warning letter.  O'Brien, 532 F.3d at 810 See also Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 788 (8th Cir. 2007), abrogated on other grounds by Torgerson, 643 F.3d at 1031 (finding allegations "amount[ed] to a frustrating work environment rather than an objectively hostile work environment"); Bradley v. Widnall, 232 F.3d 626 (8th Cir. 2000), abrogated on other grounds by Torgerson, 643 F.3d at 1031 (an employer's conduct was

24

not so severe or pervasive to have affected a term or condition of employment despite the employee's "frustrating work situation" characterized by her being: excluded from the decision-making process, treated with disrespect, subjected to false complaints, and curtailed in her supervisory duties).  Defendant is entitled to summary judgment as to Plaintiff's claim of harassment in Count III.

2.    Discipline for requesting an accommodation

In Count III, Plaintiff also claims that she was retaliated against for requesting an accommodation.  The purposed adverse employment actions upon which Plaintiff bases her retaliation claim in Count III are the same as her harassment claim – her supervisor subjected to her negative performance counseling and issued her a warning letter.  Defendant argues that the performance counseling and warning letter do not amount to retaliation, because they did not rise to the level to an adverse employment action.

As stated above, on order to state a claim of retaliation, a plaintiff must allege: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal connection exists between the two.  Lopez, 989 F.3d at 664, Withers, 763 F.3d at 1005.

Plaintiff has not shown that the negative performance counseling or warning letter were used against her or placed her at a material employment disadvantage.  At most, she asserts that the March 4, 2020, Performance Counseling (Non-Adverse) "has the potential to lead to more severe penalties and consequences." (ECF No. 36 at 13).  "A poor performance rating does not in itself constitute an adverse employment action because it has no tangible effect upon the recipient's employment."  Spears v. Missouri Dep't of Corr. & Hum. Res., 210 F.3d 850, 854 (8th Cir. 2000) (citing Cossette v. Minnesota Power & Light, 188 F.3d 964, 972 (8th Cir. 1999); cf. Wilson v.

25

Miller, 821 F.3d 963, 968 (8th Cir. 2016) (regarding First Amendment retaliation claim, "[s]tanding alone, a poor performance rating does not constitute an adverse employment action because it has no tangible effect on the employee's conditions of employment.").  Rather, "[a]n unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." Spears, 210 F.3d at 854 (citing Enowmbitang v. Seagate Tech., Inc., 148 F.3d 970, 973–74 (8th Cir. 1998). Plaintiff points to no evidence in the record that either the negative performance counseling or the warning letter impacted her employment at NARA.  Plaintiff fails to establish she suffered an adverse employment action in Count III, and Defendant is entitled to summary judgment as to her retaliation claim.

> ### 3.   Delay and denial her request for an accommodation due to retaliation, reprisal, and disparate treatment

Finally, in Count III Plaintiff alleges that NARA delayed and denied her request for an accommodation as retaliation.  She also alleges that she suffered disparate treatment from the delay and denial of her request for an accommodation.

First, NARA's denial of Plaintiff's request for an accommodation is the basis of Plaintiff's failure to accommodate claim in Count II.  The claims are based on identical conduct.  Requesting an accommodation is an activity protected by the Rehabilitation Act, Heisler v. Metro. Council, 339 F.3d 622, 632 (8th Cir. 2003), and some courts have found that the denial of an accommodation can serve as an adverse action for a retaliation claim. See, e.g., Zeigler v. Potter, 641 F. Supp. 2d 25, 30 (D.D.C. 2009), aff'd, No. 09-5349, 2010 WL 1632965 (D.C. Cir. Apr. 1, 2010) ("[A]n employer's denial of accommodations, in certain circumstances, can be retaliatory even if it were not prompted by direct discrimination."). That said, the Court agrees with other

courts finding that "the request for an accommodation and the denial of that accommodation cannot simultaneously serve as the protected activity and the adverse action, respectively." Allen-Smith v. Vilsack, No. 4:13-CV-27 JAR, 2014 WL 467745, at *7 (E.D. Mo. Feb. 5, 2014) (citing Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1261 (11th Cir. 2001); Burch v. Henderson, No. 97-1095-CV-W-6, 2000 WL 97184, at *20 (W.D. Mo. Jan.27, 2000)). "If no accommodation was otherwise forthcoming from defendant, plaintiff cannot argue that her protected activity caused the absence of a reasonable accommodation." Burch, 2000 WL 97184, at *20 (quotation omitted).

Second, as discussed above, Plaintiff's request for reassignment under a different supervisor and chain of supervision was not a request for a reasonable accommodation, and Plaintiff has not established a claim of failure to accommodate under the Rehabilitation Act. Thus, the delay and/or denial of Plaintiff's request for an unreasonable accommodation cannot serve as an adverse employment action for retaliation or disparate treatment claims under the Rehabilitation Act because Plaintiff was not entitled to the accommodation. Becerra v. EarthLink, Inc., 421 F. Supp. 2d 1335, 1349 (D. Kan. 2006). Plaintiff's claims in Count III are without merit.

### V. Conclusion

In sum, the Court finds Defendant is entitled to summary judgment as a matter of law as to all claims asserted against it in Plaintiff's Complaint. With regard to Count I, Plaintiff fails to establish that she engaged in a protected activity or that the denials of promotions were causally related to her purported protected activity. As for moving her desk items and personal belongings to a closet, the Court finds this was not an adverse employment action, and in any event, NARA had a legitimate, non-discriminatory reason for moving Plaintiff's office and things. With regard to Count II, the Court finds Plaintiff's request for a different supervisor was not a reasonable request for an accommodation, and that NARA engaged in the interactive process under the

Rehabilitation Act.  Finally, Plaintiff fails to establish claims of harassment, retaliation, or disparate treatment in Count III.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Colleen Shogan's Motion to Dismiss or, Alternatively, for Summary Judgment is **GRANTED** in that Defendant is entitled to Summary Judgment as to all claims against it in Plaintiff's First Amended Employment Discrimination Complaint.  [ECF No. 30]

An appropriate judgment shall accompany this Memorandum and Order.

_Ronnie L. White_
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this _20th_  day of September, 2023.

28